UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTIN A. WRIGHT and KATHY L. BREIWICK, on behalf of themselves and all others similarly situated, | Case No. 09-CV-0443 (PJS/AJB) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MEDTRONIC, INC.; ARTHUR D. COLLINS, JR.; WILLIAM A. HAWKINS; VICTOR J. DZAU; SHIRLEY ANN JACKSON; DENISE M. O'LEARY; JEAN-PIERRE ROSSO; JACK W. SCHULER; RICHARD H. ANDERSON; ROBERT C. POZEN; DAVID L. CALHOUN; JAMES T. LENEHAN; KENDALL J. POWELL; GARY ELLIS; TERRY CARLSON; WARREN WATSON; DAVID NESS; GARY LUBBEN; KATIE SYZMAN; CAROL A. MCCORMICK; THE COMPENSATION COMMITTEE; THE QUALIFIED PLAN COMMITTEE; THE MEDTRONIC, INC. BOARD OF DIRECTORS, and JOHN DOES 1-10, | |
| Defendants. | |

Thomas J. McKenna, GAINEY & MCKENNA; and David E. Krause, KRAUSE & HOVLAND, CHTD, for plaintiffs.

Jeffrey B. Rudman, John J. Butts, and Steven F. Cherry, WILMER CUTLER PICKERING HALE & DORR LLP; and Patrick S. Williams, BRIGGS & MORGAN, P.A., for defendants.

Plaintiffs Christin Wright and Kathy Breiwick invested in the Medtronic, Inc. Savings and Investment Plan ("the Plan") sponsored by their former employer, defendant Medtronic, Inc. ("Medtronic") and established pursuant to the Employee Retirement Income Security Act

-1-

("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiffs bring this putative class action against various alleged Plan fiduciaries, including Medtronic itself, the Medtronic compensation and qualified-plan committees, Medtronic's Board of Directors, and various named and unnamed corporate officers and directors. Plaintiffs allege that defendants breached various fiduciary duties and that those breaches resulted in losses for which defendants are now liable to the Plan under §§ 1109 and 1132(a)(2).[1]

This matter is before the Court on defendants' motion to dismiss plaintiffs' third amended complaint. For the reasons stated below, defendants' motion is granted, and plaintiffs are denied leave to file a fourth amended complaint.

## I. BACKGROUND

Medtronic, a large medical-technology company, is the sponsor and administrator of the Plan. Third Am. Compl. [Docket No. 45] (hereinafter "TAC") ¶¶ 2, 19; *see also* Am. Compl. Ex. C [Docket Nos. 8-4, 8-5] (hereinafter "Plan § ___").[2] Plaintiffs allege that defendants breached their fiduciary duties during the class period (July 18, 2006 through November 20, 2008) by imprudently permitting Plan participants to invest in Medtronic stock. TAC ¶¶ 3-4. Plaintiffs further allege that defendants failed to provide complete and accurate information regarding Medtronic and the value of its stock. TAC ¶ 10. Plaintiffs bring various claims that

---

[1] All citations to ERISA are to Title 29 of the United States Code.

[2] Plaintiffs attached the Plan to their first amended complaint, but did not attach the Plan to their third amended complaint. Nevertheless, the Court may consider the Plan in conjunction with defendants' motion to dismiss. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (explaining that, on a motion to dismiss, "a court may consider . . . documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" (citation and quotations omitted)).

are derivative of their "prudence" and "disclosure" claims, including claims that defendants failed to properly monitor the performance of their fiduciary appointees; that defendants failed to avoid or ameliorate their inherent conflicts of interest; that defendants breached their duty to disclose necessary information to their co-fiduciaries; and that defendants failed to prevent breaches by their co-fiduciaries.[3]

The Plan is a "defined contribution plan" within the meaning of § 1002(34). TAC ¶ 45. According to the governing Plan document, the Plan consists of three principal components: an employee stock ownership plan ("ESOP"), a supplemental retirement plan, and a personal-investment plan. Plan §§ 1.1, 1.2. The Plan is funded by contributions from individual participants and by matching contributions from Medtronic. TAC ¶¶ 46, 51-54. Plan participants direct the investment of both their own contributions and Medtronic's matching contributions into various investment options, including Medtronic stock. TAC ¶¶ 47, 54. All participant-directed investments in Medtronic stock are deemed to be held under the ESOP component of the Plan. Plan § 1.1.

Plaintiffs allege that defendants permitted the Plan to hold and acquire millions of dollars' worth of Medtronic stock even though they knew or should have known that Medtronic stock was an imprudent investment. Plaintiffs base their claim that Medtronic stock was an imprudent investment during the class period on three types of allegations: (1) allegations regarding Medtronic's Sprint Fidelis defibrillator lead, which, plaintiffs allege, suffered from severe defects that ultimately led to its recall from the market; (2) allegations regarding

---

[3]Not all of plaintiffs' claims are pleaded against every defendant. But for purposes of ruling on defendants' motion to dismiss, it is not necessary to distinguish among the various defendants.

Medtronic's Infuse bone-graft product, which, according to plaintiffs, Medtronic unlawfully promoted for dangerous off-label uses; and (3) allegations that Medtronic paid illegal kickbacks to doctors, was out of compliance with applicable Food and Drug Administration ("FDA") regulations, and lacked adequate internal controls. TAC ¶ 5.

The Fidelis lead is a wire that connects an implantable cardioverter defibrillator to the heart muscle. TAC ¶ 87. The FDA approved Fidelis leads for sale in September 2004, and the leads have been implanted in more than 160,000 patients. TAC ¶ 116.[4] In February 2007, Dr. Robert Hauser, a senior consulting cardiologist at the Heart Institute, wrote a letter to Medtronic warning that the Fidelis lead was not safe. TAC ¶ 119. Hauser also provided Medtronic an advance copy of a study in which he found that the Fidelis lead appeared prone to early failure because of its tendency to fracture. TAC ¶ 119. The study concluded that the Fidelis lead had a significantly higher failure rate than did Medtronic's older Quattro lead. TAC ¶ 121. Medtronic initially downplayed problems with the Fidelis lead, but eventually recalled the lead on October 15, 2007. TAC ¶ 126. In the weeks following the recall, Medtronic stock fell from $56.33 per share (on October 12) to $45.54 per share (on November 7), a decline of 19 percent. TAC ¶ 128.

Infuse is a bone-filling material containing a bone protein. TAC ¶ 87. Plaintiffs allege that off-label uses of Infuse present severe risks to patients and have resulted in multiple wrongful-death suits against Medtronic. TAC ¶¶ 99, 104. Notwithstanding these risks, plaintiffs allege, Medtronic illegally promoted off-label uses of Infuse to the point where, during the class

---

[4]Elsewhere in the third amended complaint, there is a reference to 268,000 implanted leads. TAC ¶ 126.

period, 85 percent of Infuse sales were for off-label uses. ¶¶ 100, 102. Although defendants were aware of these facts, plaintiffs allege, defendants did not disclose to Plan participants either the risks of off-label uses of Infuse or the extent of Medtronic's financial dependence on off-label sales. TAC ¶ 99.

On November 18, 2008 — just before the end of the class period — Medtronic reported $829 million in revenue from its spinal segment. This represented a decline of $30 million from the previous quarter, and this decline was caused by a decrease in the sales of Infuse. TAC ¶ 110. Medtronic also disclosed that it had recently received a subpoena from the Department of Justice regarding off-label uses of Infuse. TAC ¶ 110. Over the next couple of days, Medtronic stock fell from $34.49 per share to $29.04 per share, a decline of about 16 percent. TAC ¶ 111.

Plaintiffs allege that, in light of the problems with the Fidelis lead and Infuse, as well as Medtronic's alleged illegal marketing practices and companywide problems with corporate compliance, defendants should have taken a variety of steps during the class period to protect Plan participants: First, as of the first day of the class period (July 18, 2006), defendants should not have permitted Plan participants to purchase any additional Medtronic stock. TAC ¶ 65(a)-(b). Second, defendants should have limited each Plan participant's investment in Medtronic stock to no more than a "prudent percentage" of the participant's overall investments, and forced the participant to direct the "excess" into other investment options. TAC ¶ 65(c). Third, defendants should have disclosed to participants the "true risk" of investing in Medtronic stock and advised participants to redirect their investments elsewhere during Medtronic's investigation of issues concerning the Fidelis lead. TAC ¶ 65(d). Fourth, to the extent that such disclosure did not persuade participants to entirely divest themselves of Medtronic stock, Medtronic should

have liquidated the Plan's investments in Medtronic stock in an orderly fashion after appropriate public disclosure.[5] TAC ¶ 65(e). Finally, if Medtronic refused to allow other Plan fiduciaries to make the necessary disclosures to participants, defendants should have alerted the appropriate regulatory agencies of this refusal. TAC ¶ 65(f).

## II. ANALYSIS

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

---

[5]Notably, plaintiffs allege that disclosure of the "true risk" of investing in Medtronic stock should first have been made to participants. TAC ¶ 65(d). According to plaintiffs, a public disclosure of that risk should only have been made in the event that participants failed to rid themselves of their Medtronic stock. TAC ¶ 65(e). Thus, plaintiffs apparently believe that defendants had a fiduciary duty to invite participants to break the law by engaging in insider trading.

### B. Count I (Duty of Prudence)

In Count I of the third amended complaint, plaintiffs allege that defendants breached their duty of prudence by permitting Plan participants to invest in Medtronic stock, which plaintiffs allege was a "highly speculative and risky investment in light of [Medtronic's] fundamental weaknesses . . . ." TAC ¶ 157. As the Court has previously held, the Plan is an "eligible individual account plan" (or "EIAP"), and, as such, is exempt from several of the requirements that ERISA generally imposes on benefit plans. *See Wright v. Medtronic, Inc.*, No. 09-0443, 2010 WL 1027808, at *6 (D. Minn. Mar. 17, 2010) ("*Wright I*"). Accordingly — and as explained more fully in *Wright I* — under the presumption first articulated in *Moench v. Robertson*, 62 F.3d 553 (3rd Cir. 1995), "plaintiffs' prudence claim can survive only if they have alleged sufficient facts to demonstrate that they have a non-speculative claim that investing in Medtronic stock during the class period was so risky that no prudent fiduciary would have invested *any* Plan assets in Medtronic stock." *Wright I*, 2010 WL 1027808, at *5.

Just as in *Wright I*, the Court concludes that plaintiffs have failed to plead facts that, if true, would overcome the *Moench* presumption. Plaintiffs point to declines in the price of Medtronic's stock after Medtronic announced the recall of the Fidelis lead and disclosed declining sales of Infuse and a DOJ investigation into off-label uses of Infuse. But these declines — 19 percent and 16 percent, respectively — are nowhere near the type of allegations courts have held to be necessary to state a claim for breach of the duty of prudence. *See Wright I*, 2010 WL 1027808 at *6 n.5 (citing cases); *see also Quan v. Computer Sciences Corp.*, 623 F.3d 870, 882 (9th Cir. 2010) ("if there is room for reasonable fiduciaries to disagree as to whether they are

bound to divest from company stock, the abuse of discretion standard protects a fiduciary's choice not to divest"). Count I of plaintiffs' third amended complaint is therefore dismissed.[6]

## C. Count V (Duty of Loyalty/Duty of Disclosure)

Count V of plaintiffs' third amended complaint seeks recovery for breach of the duty of loyalty. The duty of loyalty "includes the obligation to deal fairly and honestly with all plan members" and "requires an ERISA fiduciary to communicate any material facts which could adversely affect a plan member's interests." *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (stating that the duty of loyalty imposes disclosure obligations in addition to those specified in ERISA and its associated regulations). In Count V, plaintiffs allege that Medtronic breached its duty of loyalty by making misleading statements about the Fidelis lead and Infuse to Plan participants and by failing to disclose negative information about these products as well as about Medtronic's general corporate practices. The Court considers the misrepresentation claim and the failure-to-disclose claim separately.

### 1. Misrepresentation Claim

Plaintiffs allege that defendants made a number of misrepresentations about the Fidelis lead and Infuse in Medtronic's SEC filings, which are incorporated by reference into the

---

[6] The Court notes that, in a related case almost identical to this one, the Eighth Circuit declined to decide whether to adopt the *Moench* presumption. *See Brown v. Medtronic, Inc.*, No. 09-2524, 2010 WL 5059594, at *8 (8th Cir. Dec. 13, 2010). Nevertheless, the Eighth Circuit held that the *Brown* plaintiff's allegations about the Fidelis lead failed to state a claim for breach of the duty of prudence. *Id.* ("it is fanciful to believe Medtronic could have [immediately divested the Plan of all Medtronic stock upon receipt of Dr. Hauser's report] without creating a much more severe impact on stock price than the alleged impact that Medtronic's actual response caused"). The holding in *Brown* confirms this Court's conclusion that plaintiffs have failed to plead a viable prudence claim.

Summary Plan Description ("SPD"). *See* Docket No. 16-3 at MT 0000177 ("The following documents, filed with the Securities and Exchange Commission by Medtronic and the Plan, are incorporated herein by reference."). The threshold question presented by plaintiffs' misrepresentation claim is whether the allegedly misleading communications were made in defendants' fiduciary capacity. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").

This Court has already held that "SEC filings are made in a company's corporate capacity — and not in its capacity as an ERISA fiduciary — and therefore do not, without more, constitute fiduciary communications." *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1054 (D. Minn. 2009). In this case, however, plaintiffs allege that, when defendants incorporated Medtronic's SEC filings into the SPD, defendants turned those filings into fiduciary communications for purposes of ERISA. And therefore, plaintiffs contend, if there were misrepresentations in those SEC filings, defendants can be held liable under ERISA for essentially repeating those misrepresentations in the SPD.

The issue raised by plaintiffs is difficult, but the Court need not address the issue because plaintiffs' misrepresentation claim fails for an independent reason: Plaintiffs have failed to plead reliance on any alleged misrepresentation.[7]

---

[7]Plaintiffs argue that, in *Morrison*, this Court held that reliance may be presumed. Plaintiffs are incorrect. The Court did not need to decide whether reliance could be presumed in
(continued...)

The statutory language under which plaintiffs bring their claims requires fiduciaries to "make good to [the] plan any losses to the plan resulting from" breaches of fiduciary duty. § 1109; *see also* § 1132(a)(2) (permitting participants to bring actions for relief under § 1109).[8] In other words, for plaintiffs to recover for defendants' alleged misrepresentations to Plan participants, they must show that a loss "result[ed] from" the misrepresentations. *See also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("In order to state a claim [for breach of fiduciary duty], a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, *and thereby caused a loss to the Plan*." (emphasis added)). But plaintiffs do not even allege that they read the alleged misrepresentations, much less that they relied on those misrepresentations. The Court cannot fathom — and plaintiffs cannot explain — how a loss could have "result[ed] from" a misrepresentation made to a Plan participant unless that participant read and relied on the misrepresentation.

Rather than allege that they in fact relied on any of the alleged misrepresentations, plaintiffs instead contend that they should be *presumed* to have relied on the alleged misrepresentations because they are seeking relief on behalf of the Plan under §§ 1109 and 1132(a)(2). Although a few courts have accepted this argument, the Court does not find it

---

[7](...continued)
*Morrison* because the *Morrison* plaintiffs in fact pleaded reliance. 607 F. Supp. 2d at 1056.

[8]The TAC contains a passing reference to another basis for liability under § 1109: Plaintiffs request, "[i]n the alternative," for their lawsuit to proceed as a suit to "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . ." § 1109. *See* TAC ¶ 155. But plaintiffs have not alleged that any fiduciary made any profits through the use of Plan assets, nor have they relied on this language in opposing defendants' motion to dismiss.

persuasive. Again, § 1109 permits recovery for a misrepresentation to a Plan participant only if a loss "result[ed] from" the misrepresentation — that is, only if the misrepresentation *caused* the loss. The fact that recovery is sought on behalf of the Plan is beside the point. No recovery is possible — on behalf of the Plan, or on behalf of anyone else — unless *someone* read and relied on the misrepresentation. If a misrepresentation is made, and that misrepresentation is completely ignored, then no loss could possibly have "result[ed] from" the misrepresentation. *Cf. In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 WL 3245931, at *15 (D.N.J. Sept. 14, 2004) ("[T]he fact that Plaintiffs may have to show individual reliance upon misrepresentations to prevail on some claims does not imply that they do not seek recovery for the Plan: losses to the Plan may have resulted from decisions by individual participants; but that does not mean that those losses were not losses to the Plan, it simply means that some of the decisionmaking for Plan investments was conducted by the participants who contributed to it").

Plaintiffs also argue that reliance should be presumed under a "fraud on the market" theory. Under that theory,

> [a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action.

*Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). In an ordinary securities-fraud action, then, reliance on the market price is a proxy for reliance on the truth of information disseminated to the public. Because investors are presumed to rely on the integrity of the price, they are presumed to rely on the truth of the information that is reflected in that price.

The problem with plaintiffs' attempt to invoke this theory is that Medtronic was not acting as an ERISA fiduciary when it filed documents with the SEC. *Morrison*, 607 F. Supp. 2d at 1054. Medtronic may have lied in its SEC filings, those lies may have caused the market to overvalue Medtronic stock, and thus Medtronic may be liable to plaintiffs (and other investors) under the securities laws. But this is an ERISA action, not a securities-fraud action. To recover under ERISA, plaintiffs must show that a separate, additional, *fiduciary* communication to the Plan participants caused harm to the Plan. Even assuming (without deciding) that Medtronic's SEC filings became fiduciary communications when they were incorporated into the SPD, there is no allegation that these communications had any impact on the price of Medtronic stock. *See* Hr'g Tr. 79, Sept. 16, 2010 [Docket No. 63] ("We don't set the price. The market sets it.").

It therefore makes no sense to say that plaintiffs' reliance on misrepresentations in the *SPD* may be presumed on the basis of plaintiffs' reliance on the *market price*. The former has nothing to do with the latter. Indeed, if anything, plaintiffs' argument that they relied on the integrity of the market price *undermines* the notion that they relied on the SPD or any other fiduciary communication. The "fraud on the market" theory simply does not help plaintiffs here.

In short, the Court concludes that, to recover under §§ 1109 and 1132(a)(2) for a misrepresentation to a Plan participant, plaintiffs must plead reliance on that misrepresentation.[9]

---

[9]It is worth noting that, in cases arising under other sections of ERISA, the Eighth Circuit has consistently required plaintiffs to show reliance on fiduciary misrepresentations. *See, e.g.*, *Greeley v. Fairview Health Servs.*, 479 F.3d 612, 614 (8th Cir. 2007) ("In order for an employee to recover from his employer for a faulty SPD, this court requires the employee to show he relied on its terms to his detriment."). These cases arise in a variety of factual and legal contexts, not all of which are analogous to this case. In general, however, these cases illustrate the common-sense notion that no harm can flow from a misleading fiduciary communication to plan participants if no participant read or relied on the communication.

Because plaintiffs did not plead reliance on any misrepresentation made by any defendant in a fiduciary capacity, plaintiffs' misrepresentation claim must fail. Likewise, to the extent that plaintiffs contend that defendants had an affirmative duty to disclose additional information in order to render any previous statements not misleading, such claims must also fail. Because plaintiffs failed to plead reliance on the original misleading statements, plaintiffs cannot show that the failure to correct those statements caused harm to the Plan.

2. Failure-to-Disclose Claim

In addition to alleging that defendants made misleading statements, plaintiffs also allege that defendants failed to disclose material negative information about Medtronic during the class period. According to plaintiffs, defendants became aware or should have become aware of this material negative information as a result of their status as Medtronic corporate officers and directors.

The Eighth Circuit has recognized that, aside from ERISA's extensive and specific disclosure obligations, the general duty of loyalty under § 1104 imposes "additional obligations of communication and disclosure under certain circumstances." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). But given the extent of ERISA's specific disclosure requirements, the Eighth Circuit is "not quick to infer [additional] duties of disclosure under § 1104 . . . ." *Id.*

Courts have split on the issue of whether corporate insiders who are also ERISA fiduciaries have a duty under ERISA to disclose nonpublic information about the corporation that might affect the value of employer stock. *Compare In re SunTrust Banks, Inc. ERISA Litig.*, No. 08-3384, 2010 WL 4339342, at *9-10 (N.D. Ga. Oct. 25, 2010) (holding that the plaintiffs

stated a claim for breach of fiduciary duty based on the defendants' failure to disclose the employer's deteriorating financial condition) *with Dann v. Lincoln Nat'l Corp.*, 708 F. Supp. 2d 481, 493 (E.D. Pa. 2010) (explaining that the defendants had no duty to disclose nonpublic adverse corporate events). As this Court remarked in *Wright I*, this lawsuit is one of many in which "plaintiffs' attorneys have taken what is essentially a securities-fraud action and pleaded it as an ERISA action in order to avoid the demanding pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737." *Wright I*, 2010 WL 1027808, at *1. As this Court also remarked, "these increasingly popular actions have given rise to numerous difficult legal issues, some of which have divided the federal courts." *Id.* The question of whether ERISA requires a corporate insider who is also an ERISA fiduciary to disclose nonpublic information to plan participants is one such issue.

Recognizing that there are strong arguments on both sides of this issue, the Court concludes that ERISA should not be read to impose a wide-ranging duty of disclosure on corporate insiders who serve as ERISA fiduciaries. As other courts have observed, imposing such a duty "would either render much of securities law a dead letter, or (more likely) dissuade employers from offering company stock to employees in the first place, in direct contravention of Congress's objectives when it passed ERISA." *Gearren v. McGraw-Hill Cos.*, 690 F. Supp. 2d 254, 273 (S.D.N.Y. 2010). It is difficult to believe that Congress intended that ERISA — a statute governing employee-benefit plans — supplant the comprehensive and delicately balanced system of laws and regulations that define the information that a corporation must disclose to the investing public.

In the absence of clearer guidance from Congress, the Court concludes that ERISA and the securities laws should be confined to their respective spheres. Under this analysis, ERISA defines when a fiduciary must disclose plan- and benefit-specific information that is of interest to plan participants but not to investors generally. *Cf. Braden*, 588 F.3d at 598-600 (holding that the defendants could be liable for failing to disclose that investment options included in the plan charged excessive fees and shared those fees with the plan's trustee, thus creating a conflict of interest). At the same time, the securities laws define when general financial and corporate information must be provided to the investing public — including, but obviously not limited to, plan participants. *See In re Citigroup ERISA Litig.*, No. 07-9790, 2009 WL 2762708, at *22 (S.D.N.Y. Aug. 31, 2009) (explaining that, while ERISA requires fiduciaries to volunteer information about plan benefits, "it is quite another matter to suggest that a fiduciary must volunteer financial information about companies in which participants may invest").

This result is also in keeping with the limited scope of the fiduciary duties imposed by ERISA. Unlike traditional trust law, ERISA permits fiduciaries to hold conflicting roles so that employers remain free to pursue their business interests, even when doing so might harm the interests of the plan's participants. *Cf. Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) ("Persons who serve as fiduciaries may also act in other capacities, even capacities that conflict with the individual's fiduciary duties.").

The Court therefore concludes that ERISA does not impose an affirmative duty on a corporate insider who acts as a fiduciary of a defined-contribution plan to disclose to plan participants nonpublic (i.e., "inside") information about the corporation that might affect the

value of the corporation's stock. Instead, employee-investors who believe that material information has been unlawfully withheld must, like every other member of the investing public, seek redress under the securities laws. The Court therefore grants defendants' motion to dismiss Count V.

### D. Remaining Counts

Plaintiffs' remaining claims include Count II (Failure to Monitor Fiduciaries), Count III (Failure to Avoid Conflicts of Interest), Count IV (Failure to Disclose Necessary Information to Co-Fiduciaries), and Count VI (Co-Fiduciary Liability). All of these claims are derivative of plaintiffs' prudence and disclosure claims. As the prudence and disclosure claims have been dismissed, plaintiffs' remaining claims must likewise be dismissed. *See Brown v. Medtronic, Inc.*, No. 09-2524, 2010 WL 5059594, at *9 (8th Cir. Dec. 13, 2010) (because plaintiffs failed to state a claim for a breach, their derivative claims of "divided loyalties" and failure to properly appoint, monitor, and inform other fiduciaries must fail); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 953, 968-69 (E.D. Wis. 2009) (same).

The Court therefore grants defendants' motion to dismiss the third amended complaint in its entirety. As the Court previously warned, plaintiffs will not be given leave to file a fourth amended complaint. *Wright I*, 2010 WL 1027808, at *14.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss plaintiffs' third amended complaint [Docket No. 48] is GRANTED.

2. Plaintiffs' third amended complaint [Docket No. 45] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 5, 2011

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge